MARY MALONEY, ETC., *v.* ST. LOUIS MUTUAL LIFE INS. CO.

**Courts—Jurisdiction—Ordinary Docket.**

An action founded upon an insurance policy executed and delivered, and also upon a contract for insurance not evidenced by a policy, is cognizable in the common law court, and should be instituted and prosecuted on the ordinary docket.

**Courts—Transfer of Causes—Discretion of Court.**

Refusal of the court to transfer a cause from the equity docket to the ordinary docket where it should have been brought, is not reversible error, where the motion was not made until after answer, and after all the parties are ready for submission, no abuse of discretion being shown.

**Insurance—Renewal Policy—Evidence.**

Where an officer of an insurance company swore that the policy in question was never renewed, a clip off the margin at the foot of the application is not sufficient to warrant the assumption that the margin was clipped to conceal the fact of the indorsement of a renewal of the policy.

**Insurance—Evidence—Statement by Agent.**

A statement by an insurance agent to a third party that plaintiff was insured and that there would be no trouble about his insurance, was held not evidence against the insurance company.

APPEAL FROM MARION CIRCUIT COURT.

January 8, 1873.

OPINION BY JUDGE LINDSAY:

Appellants' petition sets up two separate and distinct causes of action. The first is founded upon a life insurance policy executed and delivered. The second upon a contract for insurance fully consummated, but which was not evidenced by a policy, the person insured having been killed before its delivery. Both are properly

cognizable in a common law court, and the action ought to have been instituted and prosecuted on the ordinary side of the docket.

Appellants, however, sued in equity, and appellee waived its right to have the cause transferred, and prepared its defense in accordance with the rules regulating equitable proceedings.

The first question presented is whether the court erred in overruling appellants' motion to transfer the cause to the ordinary docket for trial after both parties were fully prepared and the cause ready for submission. Sec. 7 of the Civil Code of Practice provides that "An error of the plaintiff as to the kind of proceedings adopted shall not cause the abatement or dismissal of the action, but merely a change into the proper proceedings, by amendment in the pleadings, and a transfer of the action to the proper docket." Sec. 8 provides that "The error mentioned in the last section may be corrected by the plaintiff without motion at any time before the defendant has answered, or afterward on motion in court."

Here the plaintiffs erred by instituting an ordinary action on the equity side of the docket. They failed to avail themselves of their right to transfer before answer, and were compelled by motion to ask a transfer at the hands of the court. The fact that the absolute right to the transfer ceased to exist when the answer was filed, and that they were compelled to ask the court to do for them that which they had lost the right of their own motion to do, shows that the court had some discretion in the matter. We can not say that this discretion was abused when their motion was overruled. The transfer of the cause might have compelled appellee to go to trial with its testimony in the shape of depositions when it has the right to examine its witnesses orally, upon a jury trial, it not appearing that the witnesses were present. It would have given appellants the right to examine their witnesses orally when they had led appellee to believe they would rely upon the depositions and exhibits on file in the case. Possibly the court would have granted appellees a continuance, but under the circumstances it would have been improper and unjust to have made it necessary that a continuance should be asked.

The evidence wholly fails to sustain the second cause of action set up in the petition, giving to the apparent inconsistencies in the exhibits filed and the statements made by the officers of the insur-

ance company the greatest possible weight; and still there can not be a doubt entertained but that the application of July 17, 1869, though in form an application for a new policy, was in point of fact intended to be the basis upon which the policy of the 22d of August, 1867, should be reinstated.

It is not contended that Maloney paid the second premium at the time it became due nor that he paid the interest on the note for one-half of the first premium at the time the contract of insurance required it to be paid. Nor is it denied that by reason of such failure the company had the right to cancel the policy.

If appellants can recover at all it must be upon the idea that the policy was renewed and that the company, by accepting the amount of premiums due from Maloney waived its right to claim the forfeiture. They fail to produce receipts of the company showing any such state of case, and while they prove facts conducing to show that Maloney had been robbed of his pocket-book a short time prior to his death, it is not shown that the pocket-book contained such papers. Appellants ask the court to assume that the policy had been renewed, because of certain suspicious facts connected with the record, and correspondence of the company, and the conduct and evidence of its officers and employees. They claim that the state agent for the company refused to allow their attorneys to examine the books and papers in his office at Louisville; that they withheld until after a rule upon them was made absolute to produce in court books and papers and correspondence touching Maloney's insurance; that they manufactured letters, memoranda and records; that they suppressed important papers and facts, and that they failed to produce the renewal receipts sent to their agent at Chattanooga to be delivered to Maloney when he paid up the amounts due and in arrears on his policy.

The refusal of the state agent to allow his office to be examined by the attorneys of parties from whom his company has been or was about to be sued, until he obtained authority from the principal office, was neither immaterial nor unreasonable. The failure to respond properly to the rule is sufficiently explained by the difficulties attending the collection of letters, memoranda and copies of records from the various offices and agents through whom the business with Maloney had been transacted.

There is absolutely no evidence warranting the conclusion that letters or records of any kind were manufactured. The clipping

of the margin at the foot of the application of July 17, 1869, may be regarded as a suspicious circumstance, but a court would be going a most unreasonable length to assume that this was done to conceal the fact that on this margin it had once been endorsed that the policy of August 22, 1867, was reinstated. We have no evidence that this was the proper place to make such an endorsement, and the officers of the company all swear that no such renewal was ever made.

The failure to produce the renewal receipt sent to Chattanooga to be delivered to Maloney does not necessarily imply anything more than that a receipt upon which the money had not been paid, which have never answered any purpose whatever, which possessed no intrinsic value, and the existence of which would prove nothing in favor of the company, inasmuch as it could manufacture any number of them that might be desirable, had not been renewed or was regarded as too unimportant to be filed in answer to the rule. The failure of the witness, Hocker, to explain some of his correspondence (while it may affect his credibility as a witness) does not assist appellants in proving that the amount necessary to renew the policy had been paid. The failure of Hardie to answer the question as to whether or not the company had suppressed papers or manufactured evidence, would have justified the court in suppressing his deposition if appellants had asked to have it done, but it does not prove the essential affirmative fact that the money had been paid to procure the renewal of the policy. The statement of the same witness to Brew, that Maloney was insured and that there would be no trouble about his insurance, is not evidence against the company. Such statements were not made by Hardie in the course of his employment, and while engaged in the performance of his duties as agent relative to such insurance. Besides this, as he knew that Maloney had applied to have his policy renewed, he may have supposed that it had been done.

Upon a careful consideration of the entire record we are constrained to conclude that appellants failed to manifest their right to any relief whatever, and that their petition was properly dismissed.

Judgment *affirmed.*

*Russell, Avitt,* for appellant.

*Rv. and Fo., Foote,* for appellees.